IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PATRICIA MCMURRAY, *individually and on behalf of all others similarly situated*, | : : : : |
| Plaintiff, | : Case No. 2:24-cv-01481 : : Judge Algenon L. Marbley : Magistrate Judge Kimberly A. Jolson |
| v. | : : |
| HUNTINGTON NATIONAL BANK, | : : : |
| Defendant. | : |

## OPINION & ORDER

This matter comes before this Court on Defendant Huntington National Bank's ("Huntington") Motion to Compel Arbitration, or in the alternative, to Dismiss (ECF No. 11). For the reasons set forth below, this Court **GRANTS** the motion to compel arbitration. (ECF No. 11).

### I. BACKGROUND[1]

Plaintiff Patricia McMurray is a banking customer with Defendant Huntington National Bank. On or around July 15, 2022, she attempted to deposit a check into her Huntington account. (ECF No. 1 ¶ 27). Although she had no reason to believe that the check would be returned unpaid, a few days later, "to her surprise," she discovered that the check bounced. (*Id.* ¶ 28). As a result, Huntington charged Ms. McMurray a Returned Deposit Item Fee of $10.00 and deducted the amount from her account balance. (*Id.* ¶ 29). On or around September 21, 2022, Ms. McMurray again attempted to deposit a check into her Huntington account. (*Id.* ¶ 30). The next day, "again,

---

[1] Unless otherwise noted, the following facts are taken from Plaintiff's Complaint and assumed to be true for purposes of resolving Defendant's motion. (ECF No. 1).

1

to Ms. McMurray's surprise and by no fault of her own," the check she deposited was returned unpaid. (*Id.* ¶ 31). Huntington again charged Ms. McMurray the same $10.00 fee by deducting the amount from her account. (*Id.*).

According to McMurray, these $10 fees were "assessed pursuant to Huntington's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account." (*Id.* ¶ 32). Specifically, she explains that "each customer," "[u]pon opening a deposit account with Huntington," "receives a comprehensive 'Consumer Deposit Account Agreement' ['CDA'], which—along with the schedule of fees—forms the contract between Huntington and the customer and provides the terms and conditions governing each deposit account held with Huntington." (*Id.* ¶ 20). The CDA contains "a policy of charging Returned Deposit Item Fees regardless of the underlying facts or circumstances," which states:

> If we credit your Account for a deposited item, we may later deduct the amount of any item from your Account if we are unable to, or have reason to believe we will be unable to, collect the money from the applicable account holder. We may also charge you a fee if this happens and the item is returned to us unpaid.

(*Id.* ¶ 21). Plaintiff contends that Huntington's "blanket policy of charging the Returned Deposit Item Fee on all returned deposits, regardless of the origin of the check or the cause of its return, is unfair because it penalizes [customers attempting to deposit funds] for circumstances outside of their control," (*id.* ¶ 23), including "due to the originator lacking sufficient funds, a stop-payment order issued by the originator, or even processing errors." (*Id.* ¶ 22).

On March 30, 2024, Plaintiff filed this putative class action alleging that: (1) Huntington breached the implied covenant of good faith and fair dealing by "systematically charging" Plaintiff and other customers "for attempting to deposit checks that could not be deposited irrespective of the facts and circumstances surrounding the accountholder's attempt to deposit the check into their account"; (2) it "unjustly enriched itself by taking a benefit, in the form of a $12 charge each time

2

an item was returned, from each of their customers' accounts, regardless of their own action, without providing any additional value to their customers"; and (3) its practice of charging Returned Deposit Item Fees is "deceptive and unfair" under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. ("Ilcs") 505/1, et seq.

On June 6, 2024, Defendant moved to compel arbitration or, in the alternative, to dismiss the Complaint for failure to state a claim. (ECF No. 11). Plaintiff opposed (ECF No. 19), and Defendant replied (ECF No. 21). This matter is now ripe for resolution.

## I. STANDARD OF REVIEW

### A. Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), arbitration contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party who signed an arbitration contract fails or refuses to arbitrate, then the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of the arbitration agreement. 9 U.S.C. § 4.

In considering a motion to compel arbitration, the court must determine: (1) whether the parties agreed to arbitrate; and if agreement, (2) the scope of that agreement. *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). If the court is satisfied that the agreement to arbitrate is not "in issue," then it must compel arbitration. 9 U.S.C. § 4; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010); *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). If the validity of the arbitration agreement is "in issue," however, then the court must proceed to a trial to resolve the question. 9 U.S.C. § 4.

In order to show that the validity of an arbitration agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, which mirrors the standard required to withstand summary judgment in a civil suit.

3

*Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citations omitted). The court is instructed, though, to examine the language of the contract "in light of the strong federal policy in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsbuishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Accordingly, "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id*.

### B.  Motion to Dismiss for Failure to State a Claim

A court may also dismiss a case under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. *See generally* Fed. R. Civ. P. 12(b)(6). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). On a motion to dismiss for failure to state a claim, the court must "construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). If more than one inference may be drawn from an allegation, then the court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The court, therefore, cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

Although the standard for analyzing a Rule 12(b)(6) motion is liberal, the plaintiff is required to plead more than bare assertions of legal conclusions. *Bredesen*, 500 F.3d at 527 (citing *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.") (internal quotation marks and citation omitted). Indeed, the court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Simply put, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.*

## II. LAW & ANALYSIS

Because this Court finds that Plaintiff's claims must be pursued in arbitration, this Court does not address Defendant's alternative reasons for dismissal. *See Hensel v. Cargill, Inc.*, 1999 WL 993775 (6th Cir. Oct. 19, 1999) ("Under § 3 of the FAA, . . . litigation in which all claims are referred to arbitration may be dismissed.") (citations omitted); *Andrews v. TD Ameritrade, Inc.*, No. 1:13 CV 2811, at *7 (N.D. Ohio May 1, 2014) ("Having determined that all of the claims remaining in this case are subject to the arbitration clause in the Client Agreement, this Court finds that dismissal of plaintiff's claims in deference to arbitration is appropriate."); *Denari v. Rist*, CASE NO.: 10-cv-2704, at *20 (N.D. Ill. Jan. 31, 2011) ("[B]ecause this opinion resolves all of the issues raised in Plaintiff's complaint and determines that those issues must be submitted to arbitration, dismissal is the appropriate disposition.").

As a threshold matter, courts are required to review arbitration agreements "in light of the strong federal policy in favor of arbitration," *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), pursuant to "ordinary state-law principles that govern the formation of contracts," *Bowe v. Cross River Bank, et al.*, No. 2:22-cv-04266, 2024 WL 1049820, at *16 (S.D. Ohio. Mar. 11, 2024); *Sevier Cty. Schools Fed. Credit Union v. Branch Banking and Trust Co.*, 990 F.3d 470, 475 (6th Cir. 2021) (quoting *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005)). Because

both parties agree that this dispute is governed by Illinois substantive law under the DAA's choice of law provision, this Court relies on the law of Illinois and the Seventh Circuit where applicable.

There are three requirements for Huntington successfully to compel arbitration: "(1) an enforceable written agreement to arbitrate[;] (2) a dispute within the scope of the arbitration agreement[;] and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018). As relevant here, the Deposit Account Agreement contains an arbitration provision (the "Arbitration Provision"), which provides:

> EITHER [PLAINTIFF] OR [HUNTINGTON] CAN START A BINDING ARBITRATION PROCEEDING TO RESOLVE ANY CLAIMS (AS DEFINED BELOW). . . .
>
> By opening a deposit account with us or accepting or using any deposit account services, you agree to all of the terms of this Arbitration Provision. . . . Except as otherwise limited by this Arbitration Provision, "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to a deposit account. ***It includes any claim, dispute or controversy concerning any fees or charges relating to any deposit account*** and any services relating to any deposit account, including but not limited to safe deposit box services, wire transfer services, treasury management services, online or telephone banking services, text or mobile banking services, automated teller machine services and debit card services. . . "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). . . .
>
> Either you or we may start the arbitration of any Claim. Arbitration is started by giving written notice to the other party of the intent to start the arbitration. Except as otherwise provided by the Federal Arbitration Act, this notice may be given before ***or after a lawsuit has been started over the Claim*** or with respect to other Claims brought later in the lawsuit. *Id*. at 21-23 (emphasis added).

(ECF No. 11-1 at 33) (emphasis added). Plaintiff does not dispute that her claims fall within the scope of the Arbitration Provision or that she refuses to arbitrate voluntarily. (*See generally* ECF No. 19). Plaintiff focuses solely on the first requirement—whether the parties entered into an enforceable agreement to arbitrate. To that end, she lodges two objections: (1) Plaintiff never received a copy of the DAA; and (2) Plaintiff never assented to the terms of the DAA. (*Id.* at 7–12). As the party opposing arbitration, Plaintiff bears the burden of identifying a material issue of fact as to the existence of the arbitration agreement. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). A material issue of fact as to the existence of the arbitration agreement can be supported by evidence that the arbitration agreement was never received. *First Nat'l Bank of Antioch v. Guerra Constr. Co.*, 505 N.E.2d 1373, 1376 (1987).

Through her declaration and opposition, Plaintiff contends that she is not bound by the Arbitration Provision because she "did not open her account with Huntington; rather, she opened her deposit accounts with TCF in 2007 and 2019, well before TCF's merger with Huntington in 2021." (ECF No. 19 at 5). Accordingly, Plaintiff contends that she "was not presented with and did not agree to the terms in Huntington's [Deposit Account Agreement]." (*Id.* at 6).

Plaintiff's argument that she never received the DAA, made for the first time in her opposition, fails to create a material issue of fact regarding existence of the agreement. First, her Complaint contradicts the claims she now makes in the declaration attached to the opposition. In the Complaint, Plaintiff alleges that, "[u]pon opening a deposit account with Huntington, **each customer receives** a comprehensive 'Consumer Deposit Account Agreement' . . . which . . . **provides the terms and conditions governing each deposit account** held at Huntington." (ECF No. 1 ¶ 20).

7

Second, in its reply, Huntington presents authenticated records that establish that, pursuant to its mailing policies, it sent Plaintiff the DAA as early as August 2021.[2] (*See* ECF No. 21 at 4 – 6). Specifically, on August 27, 2021, Huntington mailed Plaintiff, at her address in Illinois and in accordance with Huntington's "ordinary practice of mailing welcome letters to former TCF customers," two letters welcoming her to Huntington and informing her that her TCF accounts would transition to Asterisk-Free Checking accounts at Huntington, each of which provided a copy of the "Huntington Account Disclosures booklet contain[ing] the new terms, conditions, and fees that w[ould] apply to [her] Huntington accounts and services effective October 12, 2021" (the "Account Disclosures"). (ECF No. 21 at 5). Each version of the Account Disclosures, moreover, contained a copy of the DAA, including the Arbitration Provision at issue. (*Id.*). Evidence that Huntington provided Plaintiff with a copy of a DAA in accordance with its usual mailing policies establishes a presumption that Plaintiff received the DAA. *See Wilhelm v. BAM Trading Services Inc.*, No. 23 CV 14906, 2024 WL 2274326, at *5 (N.D. Ill. May 20, 2024); *Weisberg v. Handy & Harman*, 747 F.2d 416, 421 (7th Cir. 1984) (holding that, where a communication is shown to have been properly sent, Illinois law presumes that it was received).

Plaintiff's general attestation in her declaration that she never received or reviewed the DAA does not create a genuine dispute of material fact to rebut this presumption. *See, e.g., Tinder*,

---

[2] Because Plaintiff disputes that she received the DAA for the first time in her Opposition, Huntington is entitled to respond with the supporting evidence in reply. *See, e.g., Casella v. Sams West, Inc.*, No. 3:23-cv-102, 2023 WL 8480079, at *2 (E.D. Tenn. Oct. 31, 2023) (permitting affidavit submitted with reply in support of motion to compel arbitration as the Sixth Circuit permits such evidence where it "respond[s] only to the non-movant's response" in opposition); *Durm v. iQor Holdings US LLC*, No. 5:20CV0298, 2022 WL 219323, at *6 (N.D. Ohio Jan. 24, 2022) (denying motion to disregard supplemental declarations in reply brief in support of motion to compel arbitration where the defendant submitted declarations "to demonstrate why the arguments raised . . . in Opposition [] were incorrect"); *Gaskins v. Swope Ventures, Inc.*, 645 F. Supp. 3d 682, 686 (W.D. Ky. 2022) (denying motion to strike supplemental arguments and evidence in support of motion to compel arbitration introduced for the first time in reply brief because they addressed issues of "signature, waiver, [and] unconscionability" asserted for the first time in an opposition brief).

8

305 F.3d at 735 (finding no genuine dispute regarding issue of receipt of an arbitration provision despite plaintiff's conclusory affidavit stating that she did "not recall seeing or reviewing" an arbitration provision); *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751, 765 (N.D. Ill. 2021) (holding that general "denials [from a plaintiff] that he has neither 'seen' nor been 'presented with' an arbitration agreement are insufficiently specific to demonstrate a material factual dispute"); *Wilhelm*, 2024 WL 2274326, at *5 (finding assertion that plaintiff "was not aware, and had no reason to be aware," of an arbitration provision was a legal conclusion that did not adequately rebut presumption of receipt of an arbitration provision): *Jensen v. KeyBank, N.A.*, No. 1:17-cv-01808-SEB-DML, 2018 WL 646731, at *3 (S.D. Ind. Jan. 30, 2018) (citing *Estate of Brewer v. Dowell & Jones*, 2002-Ohio-3440, ¶ 13(8th Dist. Ct. App. July 3, 2002)) (same).

Having concluded that Plaintiff received the DAA, based on Huntington's uncontroverted evidence. this Court next considers Plaintiff's argument that she never assented to the terms of the DAA. Plaintiff initially argues that she is not bound by the DAA because "[t]here is no signed Huntington document;" however, the Federal Arbitration Act ("FAA") does not require a signature to enforce a party's obligation to arbitrate. *Jensen*, 2018 WL 646731, at *3 (noting that the FAA does not require a signed agreement to compel arbitration). So, the absence of a signed Huntington document is neither fatal under the FAA nor is it evidence that Huntington failed to obtain Plaintiff's assent to the DAA  In any event, courts have held that a consumer's continued use of an account constitutes assent to a consumer agreement, particularly where a consumer agreement states that use constitutes acceptance. *See, e.g., Wilhelm*, 2024 WL 2274326, at *5 (upholding assent to delegation of arbitrability where plaintiff "did not stop using [the] services or close her account" after receiving arbitration provision); *Davis Mobile Homes*, 824 N.W.2d 562 (Table); *Page v. GameStop Corporation*, 2024 WL 1638989, at *6 (N.D. Ohio Apr. 16, 2024) ("A rational

9

trier of fact would find that Plaintiff's continued use of his Pro Program account reflects his desire to be bound by the agreement, not to renounce it.").

Perhaps most fatal to Plaintiff's claim that she should not be bound by the terms of the DAA is that it is precisely those terms that form the basis of her cause of action. Indeed, as Defendant points out, Plaintiff's very first cause of action asserts a claim for the "covenant of good faith and fair dealing," which Plaintiff asserts is "implied in Plaintiff's . . . [DAA] with [Huntington] . . . whereby [Huntington] covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff . . . under the contract." (ECF No. 1 ¶¶ 49, 52). This allegation is incorporated into all of Plaintiff's claims. (*Id.* ¶¶ 56, 67). Plaintiff cannot choose to enforce favorable provisions of the DAA while contending that she did not provide her assent to other provisions that she deems unfavorable. *Holden v. Deloitte and Touche LLP*, 390 F. Supp. 2d 752, 766 (N.D. Ill. 2005) (upholding arbitration of claims on equitable grounds where the plaintiffs' claims were "fundamentally related to the [agreement] that contained the arbitration agreement"); *Hughes Masonry Co., Inc., v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838–39 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage."); *see Page*, 2024 WL 1638989, at *6 ("Plaintiff cannot on one hand reap the rewards, discounts, and benefits afforded to him through the Pro Terms & Conditions, and on the other hand, self-servingly reject [the arbitration] provision of the contract."). In sum, this Court finds no basis to allow Plaintiff to rely on the enforceability of the DAA for her affirmative claims while simultaneously disclaiming the enforceability of that very same contract to avoid arbitration. *Hughes Masonry*, 659 F.2d at 39; *see Page*, 2024 WL 1638989, at *6.

Because this Court concludes that Plaintiff's claims are subject to arbitration, Defendant's Motion to Compel Arbitration (ECF No. 11) is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE.**

## II. CONCLUSION

For the foregoing reasons, this Court **GRANTS** the Motion to Compel Arbitration (ECF No. 11). Plaintiffs is **ORDERED** to submit her claims against Defendant Huntington National Bank to arbitration pursuant to the terms of the Deposit Account Agreement. This action is hereby **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

DATED: March 31, 2025

11